UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| RAFAEL JUAN CASASNOVAS CORTES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 3:25-cv-01427-JAW |
| APEX BANK, et al., | ) | |
| Defendants. | ) | |

**ORDER ON PENDING MOTIONS**

In this civil action, over a year after filing his complaint, the plaintiff has still failed to effect proper service of process on one of the defendants. For a second time, rather than simply effecting service, he argues about it. The court, therefore, once again, orders counsel to properly serve the defendant to obviate an unnecessary legal issue, and, given his intransigence, the court orders plaintiff's counsel to show cause as to why the court should not impose a sanction upon him. The court also concludes that the plaintiff's complaint must be dismissed as against the judicial defendants pursuant to both the *Rooker-Feldman* and *Younger* abstention doctrines.

## I. PROCEDURAL BACKGROUND

On August 11, 2025, Raphael Juan Casasnovas Cortes filed a twenty-nine page civil complaint containing four Counts against Apex Bank, Hon. Maite D. Oronoz-Rodríguez, Hon. Sigfrido Steidel-Figueroa, and the Bureau of Alternative Methods, claiming in Count I that the Defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(e) by failing to respond to his Qualified Written Requests (QWR), in Count II that the Defendants violated Regulation X, 12

C.F.R. § 1024.36, by failing to respond to his Requests for Information (RFI), in Count III that the Defendants violated Regulation X, 12 C.F.R. § 1024.35, by failing to properly respond to Notices of Error (NOE), and in Count IV that the Defendants violated the Supremacy Clause of the United States Constitution by relying on Puerto Rico law to withhold the information Mr. Casasnovas sought. *Compl.* (ECF No. 1).

On December 24, 2025, Apex Bank filed a motion to dismiss the complaint. *Mot. to Dismiss* (ECF No. 25) (*Apex Mot.*). On January 8, 2026, Mr. Casasnovas filed an opposition to the Apex motion to dismiss. *Opp'n to Mot. to Dismiss* (ECF No. 31) (*Pl.'s Apex Opp'n*).[1] On February 4, 2026, Apex Bank filed its reply to Mr. Casasnovas's opposition to Apex Bank's motion to dismiss. *Reply to Pl.'s Opp'n to Mot. to Dismiss Filed at Docket No. 31* (ECF No. 39) (*Apex Reply*).

On January 20, 2026, Hon. Maite D. Oronoz-Rodríguez, Hon. Sigfrido Steidel-Figueroa, and the Bureau of Alternative Methods (the Judicial Defendants) moved to dismiss the complaint. *Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)* (ECF No. 33) (*Jud. Defs.' Mot.*). On February 3, 2026, Mr. Casasnovas filed an opposition to the Judicial Defendants' motion to dismiss. *Opp'n to Mot. to Dismiss* (ECF No. 37) (*Pl.'s Jud. Defs.' Opp'n*). On March 13, 2026, the Judicial Defendants filed a reply. *Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss* (ECF No. 50) (*Jud. Defs.' Reply*). On March 30, 2026, the Plaintiff, with the Court's permission, filed a surreply

[1] On January 8, 2026, Apex Bank filed a motion to deem its motion to dismiss unopposed because Mr. Casasnovas had failed to timely file his opposition. *Mot. to Deem Unopposed Def.'s Mot. to Dismiss* (ECF No. 29). On January 21, 2026, the Court rejected Apex Bank's motion. *Order on Mot. to Deem Unopposed Def's Mot. to Dismiss and Urgent Mot. for Leave to File Opp'n One Day Out of Time, to Deny as Moot Def.'s Mot. to Deem Unopposed & [for] Leave to File in Excess of Page Limits* (ECF No. 35).

to the Judicial Defendants' reply. *Pl.'s Surreply to Defs.' Reply at Docket No. 50* (ECF No. 53) (*Pl.'s Surreply*).

On April 24, 2026, the Court issued an order, requiring the Plaintiff to make service of process on Apex Bank within fourteen days of the order and to provide the Court with proof of service. *Order on Rule 12(b)(5) Mot. to Dismiss* at 9 (ECF No. 54) (*Serv. Order*). After obtaining an extension, the Plaintiff filed an affidavit of service on May 15, 2026, *Mot. Submitting Proof of Serv.* (ECF No. 57), and attached an affidavit of service. *Id.*, Attach. 1, *Aff. of Serv.* On June 5, 2026, Apex Bank filed a renewed motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). *Renewed Mot. to Dismiss* (ECF No. 60) (*Apex Renewed Mot.*). On June 22, 2026, the Plaintiff filed his opposition to the renewed motion to dismiss. *Pl.'s Opp'n to Apex Bank's Renewed Mot. to Dismiss and Req. for Limited-Serv. Disc., an Evid. Hr'g, or Alternative Extension under Rule 4(m)* (ECF No. 63) (*Pl.'s Renewed Opp'n*). On July 6, 2026, Apex Bank replied to the Plaintiff's response to its renewed motion to dismiss. *Reply to Pl.'s Opp'n to Apex Bank's Renewed Mot. to Dismiss and Req. for Limited-Serv. Disc., an Evid. Hr'g, or Alternative Extension under Rule 4(m)* (ECF No. 68) (*Apex Renewed Reply*).

## II. THE SERVICE OF PROCESS ISSUE: APEX BANK

### A. Statement of Facts

After filing his complaint on August 11, 2025, Mr. Casasnovas sought to serve Apex Bank with a copy of his complaint and summons in accordance with Rule 4(m) of the Federal Rules of Civil Procedure. *Compl.* Mr. Casasnovas attempted service

by delivering a copy of the summons and complaint at an Apex Bank branch to Tara Mitchell, who was employed at Apex Bank as a Marketing/Special Projects Specialist, and who was not authorized to accept service of process on behalf of Apex Bank. *Apex Mot.* Attach. 1, *Decl. under Penalty of Perjury of Ben Parker* at 2 (*Parker Aff.*); *Serv. Order* at 6. After reviewing federal, Puerto Rico, and Tennessee law on service of process on a corporation, in its April 24, 2026 order, the Court ruled that "[t]his is clearly insufficient service under federal, Puerto Rico, or Tennessee law", *id.*, and the Court ordered Mr. Casasnovas to properly complete service. *Id.* at 9. In its response, Apex Bank listed the proper person within Apex Bank to receive service:

> 8. Apex's designated registered agent for service of process at the time of the attempted service of process was:
>
> **Name: Matthew D. Daniels**
>
> **Address: 9721 Sherrill Boulevard**
>
> **Ste. 200, Knoxville, Tennessee 37932**

*Parker Aff.* ¶ 8.

On May 13, 2026, Mr. Casanovas filed a proof of service with the Court, *Mot. Submitting Proof of Serv.* (ECF No. 57), and he attached an affidavit of service. *Id.*, Attach. 1, *Aff. of Serv.* at 1. In his motion, he represented:

> On May 8, 2026, Defendant Apex Bank was duly served with the Summons, Complaint, and Declaration Under Penalty of Perjury of Ben Parker, by personal delivery to CT Corporation, Apex Bank's registered agent, at 300 Montvue Road, Knoxville, Tennessee 37919, in accordance with Federal Rule of Civil Procedure 4(h)(1)(B). Pursuant to Federal Rule of Civil Procedure 4(l)(1), proof of service is made by the server's affidavit. A true and correct copy of the Affidavit of Service executed by process server Kelly Munsey, dated May 11, 2026, is attached hereto as Exhibit A and incorporated herein by reference.

*Id.* at 1. The Affidavit of Service stated that Kelly Munsey, a person authorized to make service under Tennessee law, attempted to serve Mr. Daniels on May 6, 2026 but was informed by the contact that she was a legal assistant to Mr. Daniels, that she was not authorized to accept service of process on his behalf, and that he was out of town for approximately one week. *Aff. of Serv.* at 1. On May 8, 2026, Kelly Munsey then served Samantha Sutton, a registered agent of CT Corporation, at 300 Montvue Road, Knoxville, TN 37919. *Id.*

### B. The Positions of the Parties

#### 1. Apex Bank's Position

Apex Bank writes:

> As discussed below, Plaintiff's subsequent attempt at service did not comply with Rule 4 and suffers from the same fundamental defects previously identified by Apex and recognized by the Court. Consequently, service remains insufficient, the Court lacks personal jurisdiction over Apex, and dismissal under Rule 12(b)(5) is warranted for the reasons discussed below.

*Apex Renewed Mot.* at 3. Citing Ben Parker's December 19, 2025 affidavit, Apex Bank says that CT Corporation is not Apex Bank's registered agent for acceptance of service of process and that Matthew Daniels is. *Id.* at 11 (citing *Parker Aff.* ¶ 8). Accordingly, Apex Bank argues that as Mr. Casasnovas has now been given two changes to effect service of process and has failed, his complaint should be dismissed. *Id.* at 11-12.

#### 2. Rafael Juan Casanovas's Opposition

In response, Mr. Casasnovas says that "[t]he First Circuit has recognized that '[a] return of service generally serves as prima facie evidence that service was validly performed.'" *Pl.'s Renewed Opp'n* at 4 (quoting *Blair v. City of Worcester*, 522 F.3d

105, 111 (1st Cir. 2008)). Mr. Casanovas points out that "the First Circuit instructs that 'factual disputes regarding agency should typically be resolved only after a live hearing' and that where there is 'plausible factual disagreement or ambiguity,' First Circuit jurisprudence 'favors permitting the litigants the opportunity to flesh out the record.'" *Id.* (quoting *Blair*, 522 F.3d at 111-12). If service of process is defective, Mr. Casanovas maintains that, if the Court determines that service was defective, Rule 4(m) requires that the Court either "dismiss the action without prejudice" or "order that service be made within a specified time." *Id.* (quoting FED. R. CIV. P. 4(m)).

**3. Apex Bank's Reply**

Apex Bank replies that Mr. Casanovas is attempting to generate a factual controversy about service of process where none exists. *Apex Renewed Reply* at 3.

> Said motion identifies no subsequent attempt to serve the individual, despite having been afforded a second opportunity to cure the defective service on Apex. Rather than complying with Rule 4, Plaintiff continued pursuing service upon an individual who lacked authority to accept service on behalf of Apex. This, contrary to Plaintiff's argument, does not show neither diligence nor a good-faith attempt to achieve effective service.

*Id.* Apex argues that the complaint should be dismissed in light of the second failure of the Plaintiff to effect service and his decision not to attempt to cure his defective service. *Id.* at 4-5.

**C. Legal Standards**

The Court previously described the standards the First Circuit has applied to service of process issues. *Serv. Order* at 4-5. "Once adequately challenged, the burden shifts to the plaintiff to show service was proper." *Schiff v. IRS*, Civil No.: 24-1511 (CVR), 2026 U.S. Dist. LEXIS 52876, at *12 (D.P.R. Feb. 6, 2026); *Rivera-Lopez*

*v. Mun. of Dorado*, 979 F.2d 885, 887 (1st Cir. 1992). At the same time, "[a] return of service generally serves as *prima facie* evidence that service was validly performed." *Carrasquillo-Serrano v. Mun. of Canovanas*, 991 F.3d 32, 41 (1st Cir. 2021) (quoting *Blair*, 522 F.3d at 111). "That presumption of proper service is not insurmountable." *Id.* In *Carrasquillo*, the First Circuit observed that "[i]n *Blair*, the presumption was overcome by a simple affidavit stating that the parties who received service were not authorized to accept service." *Id.* (citing *Blair*, 522 F.3d at 111-12). An affidavit may be "sufficient to refute the prima facie presumption created by a return of service." *Liyanage-Don v. Liyanage-Don*, No. 1:25-cv-00461-SDN, 2026 U.S. Dist. LEXIS 25954, at *7 (D. Me. Feb. 9, 2026) (quoting *Blair*, 522 F.3d at 112 (finding presumption of service was overcome by affidavit stating parties who received service were not authorized to accept service on behalf of defendant)).

### D. Discussion

The Court is nonplussed that this service issue has returned for judicial resolution. In its April 24, 2026 order, the Court wrote:

> The Court views the service of process controversy as unnecessary, forcing the Court to examine service of process issues under federal, Puerto Rico, and Tennessee law, when an obvious solution is at hand: Rafael Casasnovas must properly serve Apex Bank with a copy of the summons and complaint.

*Serv. Order* . at 6. The record is clear. Although Mr. Casasnovas attempted to serve Matthew Daniels, when he was not immediately available, Kelly Munsey served someone at CT Corporation, presumably on the assumption that Apex Bank had designated CT Corporation as its registered agent. Although many corporations use

CT Corporation as their registered agents, not all do. *See Infinity Real Estate LLC v. Deutsche Bank Nat't Trust Co.*, No. 2:18-cv-00038-JAW, 2018 U.S. Dist. LEXIS 150075, at *13-14 (D. Me. Sept. 4. 2018) ("Infinity's November 29, 2017 service of process on CT Corporation does not constitute service of process on Deutsche Bank because there is no evidence that CT Corporation was an agent of Deutsche Bank as required by Maine Rules of Civil Procedure 4(d)(9)(a)"). Apex Bank had not designated CT Corporation as its registered agent and therefore Mr. Casasnovas's service on CT Corporation was a nullity.

Here, Mr. Casasnovas was on notice from Apex Bank itself by the December 15, 2025 Parker affidavit, which identified the name and address of its registered agent in Tennessee, and yet Mr. Casasnovas served the summons and complaint on an entity and individual not authorized to accept service on behalf of Apex Bank. *See Parker Aff.* ¶ 8 (identifying Matthew D. Daniels of 9721 Sherrill Boulevard, Suite 200, Knoxville, Tennessee, as Apex Bank's designated registered agent for service of process). The Court does not know if the fault in serving CT Corporation rests with Attorney Castellanos-Otero's loose instructions to Kelly Munsey or with Kelly Munsey's own improper decision to serve CT Corporation. It does not matter. Once Apex Bank brought the error to Attorney Castellanos-Otero's attention, it would have been simple to properly serve Apex Bank by serving Mr. Daniels and put an end to the service of process issue. As with the last service motion, however, instead of acting quickly to serve Mr. Daniels, Mr. Casasnovas again stood his ground, insisted he was right, and required the Court to resolve by order what should have been

resolved by a new attempt to serve Mr. Daniels with specific instructions to serve only him. Once again, Attorney Castellanos-Otero has chosen to argue, not act.

Mr. Casasnovas cites *Blair v. City of Worcester* in support of his opposition to Apex Bank's motion. *Pl.'s Renewed Opp'n* at 4. But in *Blair*, citing federal caselaw, the First Circuit concluded that "an affidavit denying agency, standing alone, may be sufficient to overcome the presumption of proper service created by the return of service." 522 F.3d at 112. Here, Mr. Casasnovas has had the Parker affidavit since December 24, 2025 and has neglected or refused to serve the individual Apex Bank has designated for eight months as the proper agent for service of process.

Under Rule 4(m), Mr. Casasnovas had ninety days to serve Apex Bank after he filed the complaint on August 11, 2025. FED. R. CIV. P. 4(m). Under Rule 4(m), he should have completed service on Apex Bank by early November 2025. However, due to his stubbornness or neglect, now over a year after he filed his complaint and two motions to dismiss based on failure to make service, he has still not properly served Apex Bank.

Mr. Casasnovas's intransigence has now required this Court to issue two orders on service of process; neither necessary. Had Mr. Casasnovas exercised a modicum of due diligence and flexibility, the service of process issue would have been resolved months ago. When service is not made within ninety days of the filing of a complaint, Rule 4(m) requires that the Court either to "dismiss the action without prejudice" or to "order that service be made within a specified time." FED. R. CIV. P. 4(m). In these egregious circumstances, the Court could dismiss Mr. Casasnovas's

complaint against Apex Bank without prejudice for his repeated and prolonged failure to make service of process against Apex Bank.

It is well settled that the district court has the authority to dismiss an action for plaintiff's failure to prosecute his action, including his failure to make service on defendants, as well as for plaintiff's failure to comply with the court's orders. *Stange v. Peddler*, Civil Action No. 20-12158-PBS, 2021 U.S. Dist. LEXIS 265599, at *3 (D. Mass. Aug. 20, 2021) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (court's "inherent power" to dismiss sua sponte for want of prosecution is necessary for management of its affairs and to achieve orderly and swift disposition of cases); *Zavala Santiago v. Gonzalez Rivera*, 553 F.2d 710, 712 (1st Cir. 1977) (similar); *Tyree v. Fair*, No. 92-1742, 1993 U.S. App. LEXIS 12860, at *5-6 (1st Cir. Mar. 9, 1993) (per curiam) (unpublished) (failure to make service on defendants named in complaint "in itself suffices for a finding of lack of prosecution"); *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 46 (1st Cir. 2002) ("Although dismissal ordinarily should be employed only when a plaintiff's misconduct is extreme...disobedience of court orders, in and of itself, constitutes extreme misconduct (and, thus, warrants dismissal") (citations omitted).

However, it makes little sense to dismiss Mr. Casasnovas's complaint, only to have him refile the complaint and finally properly serve Apex Bank. Instead, the Court will once again order Mr. Casasnovas to properly serve Apex Bank by serving Matthew D. Daniels, 9721 Sherrill Boulevard, Ste. 200, Knoxville, Tennessee 37932

with a copy of the complaint and summons within twenty-eight days from the date of this order.

This does not mean that there should not be a sanction for Mr. Casasnovas's willful failure to serve Apex Bank and his inexplicable stubbornness in defending his failure. The Court is contemplating imposing a sanction, not against Mr. Casasnovas, whose knowledge of service of process issues is presumably limited, but against Attorney Castellanos-Otero, who is responsible for this delay and for the violations of the Rules and the court orders. To this end, the Court ORDERS Attorney Castellanos-Otero to SHOW CAUSE within fourteen days of the date of this order as to why the Court should not impose a sanction upon him. The Court ORDERS Apex Bank to reply to Attorney Castellanos-Otero's response within fourteen days of his response. The Court will issue an order on whether a sanction should be imposed and, if so, will give counsel an opportunity to suggest an appropriate sanction.

This leaves the question of what to do about the remainder of Apex Bank's motion to dismiss the complaint, which has now been pending since December 24, 2025. Apex Bank's motion to dismiss is based on Mr. Casasnovas's failure to properly serve the Bank and on his failure to state a claim upon which relief can be granted. *Apex Mot.* at 1-25. The parties and the Court have been waylaid by the service of process issue within Apex Bank's motion to dismiss, and, as noted, Mr. Casasnovas has not yet effected service of process on Apex Bank.

"Before a federal court may exercise personal jurisdiction over a defendant, proper service of process must be effected." *Morales v. Spencer*, 52 F. Supp. 3d 362,

364 (D. Mass. 2014) (citing *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). If the Court acts on the pending Rule 12(b)(6) portion of the pending motion to dismiss, there would be a question as to whether the Court had the jurisdiction to issue the order. As the Court observed in its April 26, 2026 service order, "proper service of process is a prerequisite for litigating in federal court, and in its absence, a court lacks personal jurisdiction over the defendant unless the defendant has waived service or otherwise consented to personal jurisdiction." *Serv. Order* at 8 (quoting *Schiff v. IRS*, Civil No. 24-1511 (CVR), 2026 U.S. Dist. LEXIS 52815, at *17 n.7 (D.P.R. Mar. 12, 2026) (citing *Herndon v. Ridgway*, 58 U.S. 424, 425 (1854)).

In these circumstances, the Court has concluded it is wiser to make certain that service has been effected and then address any Rule 12(b)(6) motion to dismiss. Rather than retain the Rule 12(b)(6) motion as an orphan while resolving the service of process issue, the Court is dismissing Apex Bank's motion to dismiss without prejudice to the extent it is grounded on Rule 12(b)(6). Once served, Apex Bank has the right to refile a Rule 12(b)(6) motion, if it chooses to do so, directed to whether the complaint states a cognizable cause of action.

## III. THE RULE 12(b)(1) and 12(b)(6) MOTION: JUDICIAL DEFENDANTS

### A. The Allegations in the Complaint[2]

---

[2] "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 50, 54 (1st Cir. 2010). The Court may, however, look beyond the pleadings to any evidentiary materials submitted by the parties to determine whether it has jurisdiction. *Martínez-Rivera v. Puerto Rico*, 812 F.3d 69, 72 (1st Cir. 2016).

### 1. The Parties

Rafeal Casasnovas-Cortes is a natural person and resident of Puerto Rico. *Compl.* ¶ 4. Mr. Casasnovas was a "borrower" and "consumer" entitled to the protections of RESPA and Regulation X. *Id.* Apex Bank is a banking institution and mortgage lender/servicer and conducts mortgage lending and loan servicing operations in Puerto Rico and elsewhere." *Id.* ¶ 5. Apex Bank is subject to the requirements of RESPA and Regulation X in servicing Mr. Casasnovas's loan. *Id.* Sigfrido Steidel Figueroa is the Puerto Rico Court Administrator and is being sued exclusively in his official capacity. *Id.* ¶ 6. Maite D. Oronoz Rodríguez is the Chief Justice of the Supreme Court of Puerto Rico and is responsible for the Bureau of Alternative Methods (Negociado de Métodos Alternos), and Mr. Casasnovas states that he included Chief Justice Oronoz in this action solely in connection with her office's authority as head of the Puerto Rico Judiciary and not in connection with her judicial functions. *Id.* ¶ 7.

### 2. Rafael Casasnovas's Loan and Mortgage

---

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 320 (1st Cir. 2008)).

In reciting the allegations in the complaint, the Court has tried not include Mr. Casasnovas's adjectival advocacy in the guise of factual allegations. *See, e.g. Compl.* at 1 ("This action arises from Defendants, Apex Bank's blatant disregard for federal law governing mortgage servicing transparency and borrower rights (in pure violation and complete disregard of the [RESPA], 12 U.S.C. § 2601 et seq., and its implementing regulation, Regulation X)". Because Mr. Casasnovas interwove his factual allegations with his legal positions and his advocacy, it has been more difficult than usual to set forth the facts in the complaint without pronouncing a dispositive legal conclusion or an argument as a fact that the Court must accept as true for purposes of the pending motions. In general, where the assertion is a fact, the Court has stated it as a fact, and where the assertion is a legal conclusion or an argument, the Court has framed the statement as an allegation.

Rafael Casasnovas Cortés is the owner of a home in San Juan, Puerto Rico that is subject to a mortgage loan originally made for personal, family, or household purposes. *Id.* ¶ 9. Apex Bank is the current holder and/or servicer of this loan. *Id.* After Mr. Casanovas experienced financial hardship, Apex Bank appeared in a foreclosure action filed by an alleged previous holder against Mr. Casasnovas and his property in the Puerto Rico Court of First Instance of San Juan (a Commonwealth court), case civil no. K CD2016-0616. *Id.*

In accordance with Puerto Rico law (the "Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act," Act 184-2012), the foreclosure proceeding was referred to a mandatory mediation process. *Id.* ¶ 10. This court-supervised mediation was intended to explore loss mitigation options (such as loan modifications or other foreclosure alternatives) and is governed by confidentiality rules under Puerto Rico law, meaning communications and documents from the mediation generally cannot be disclosed outside that process. *Id.*

Notwithstanding the above, Mr. Casasnovas alleges that the mediation process requires that Apex Bank's loss Mitigation personnel not directly involved in the mediation process such as underwriters, receive and evaluate the loss mitigation documents submitted by the Plaintiff. *Id.* ¶ 11. The loss mitigation evaluation conducted by Apex Bank as part of the mandatory mediation process concluded with the servicer denying a loan modification. *Id.* ¶ 12. In connection with that denial, Mr. Casasnovas says that Apex Bank failed to provide him with notice of his right to

appeal. *Id.* Additionally, he says that Apex Bank did not disclose any specific or pertinent reason for the denial. *Id.*

Mr. Casasnovas tried to use the local discovery rule to obtain the information needed to dispute Apex Bank's loan modification denial, but the Commonwealth Court held that the information was not discoverable due to the confidentiality provisions that apply to the compulsory mediation process. *Id.* ¶ 13. Therefore, in a separate effort, independent of the foreclosure litigation, Mr. Casasnovas sought information about the handling of his loan from Apex Bank by submitting multiple QWR's under RESPA. *Id.* ¶ 14. On April 1st, 2025; May 1st, 2025 and June 10th 2025, Mr. Casanovas sent Apex Bank formal QWR's pursuant to 12 U.S.C. § 2605(e). *Id.* Each such correspondence included the name and account number of the borrower and described the information being sought regarding the servicing of the loan, thereby, in Mr. Casasnovas's view, meeting the statutory definition of a QWR. *Id.* In compliance with Regulation X, the QWR's were mailed to the exclusive address designated by Apex Bank for receipt of borrower inquiries, or otherwise to Apex Bank's business address, in which Mr. Casasnovas requested necessary information related to the servicing of his loan, including but not limited to:

a. Loan Payment History and Calculations: A complete transactional history of the loan (showing all payments received, how they were applied to principal, interest, escrow, and fees) and an explanation of the current loan balance calculation, including the application of any additional principal prepayments or charges. *Id.* ¶ 15. Mr. Casasnovas sought documentation

to understand whether payments had been properly credited and how any arrearages or fees were computed. *Id.*

b. Loss Mitigation and Foreclosure Avoidance: All information related to any evaluations of Mr. Casanovas for loss mitigation options (such as loan modifications or other foreclosure alternatives). *Id.* This included any net present value (NPV) analyses, income calculations, or criteria used by Apex Bank to grant or deny a loan modification. *Id.* Mr. Casanovas also requested copies of any notices or communications about loss mitigation sent pursuant to 12 C.F.R. § 1024.39 (early intervention) or § 1024.41 (loss mitigation procedures), and any internal notes or guidelines used by Apex Bank in reviewing Plaintiff's requests for assistance. *Id.*

c. Servicing Policies and Practices: Documents reflecting Apex Bank's policies, procedures, or practices in servicing loans of this type, especially relating to how payments are handled when a loan is delinquent or in foreclosure, how fees and escrow are managed, and how information is shared (or not shared) during foreclosure mediation. *Id.* Mr. Casasnovas inquired into whether Apex Bank's servicing practices were consistent with federal requirements and sought any internal guidelines that might shed light on Apex Bank's handling of his loan. *Id.*

d. Communications and Records: Copies of all communications or notices sent to Mr. Casasnovas regarding the loan (including default notices, monthly mortgage statements, escrow analyses, and any force-placed insurance

notices), as well as records of communications between Apex Bank and any other entities regarding his loan. *Id.* Mr. Casasnovas also requested identification of the owner or assignee of the loan (if different from Apex Bank), which servicers are specifically required to provide upon request. *Id.*

In Mr. Casasnovas's view, these categories of information all relate directly to the servicing of Plaintiff's mortgage loan account and were therefore proper subjects of a RESPA, RFI. *Id.* ¶ 16. By making these requests in writing, Mr. Casasnovas says that he invoked Apex Bank's duty under RESPA and Regulation X to conduct a reasonable investigation and provide the requested information or explain why it could not be provided. *Id.*

Apex Bank responded to Mr. Casasnovas's QWR's, but its responses were limited and, in Mr. Casasnovas's view, not compliant with the requirements of federal law. *Id.* ¶ 17. In some instances, Apex Bank provided a brief acknowledgement of receipt of the request (as required within 5 business days) and sent a written response within roughly 30 business days, as the timeline under RESPA generally requires. *Id.* However, Apex Bank failed to provide many of the documents and information Plaintiff requested. *Id.* Apex Bank's reply letters refused to produce significant categories of the requested information. *Id.* Apex Bank's responses, in relevant part, denied or declined the RFI, offering the following justifications:

a. Apex Bank stated that because there were an ongoing foreclosure lawsuit and mediation in Puerto Rico's courts involving Plaintiff's loan, it was not required to provide certain information outside of that litigation. *Id.* Apex

Bank took the position that his requests were improper or "duplicative" of discovery in the foreclosure case and that Apex Bank should not have to respond through a RESPA inquiry while litigation was pending. *Id.* Apex Bank invoked 12 C.F.R.§ 1024.36(f) and claimed that the requests sought information that had either already been asked and answered, or that Plaintiff should obtain through the court process, implying the requests were duplicative or overly broad. *Id.*

b. Apex Bank further asserted that many of the documents and data Plaintiff sought were protected by the confidentiality of Puerto Rico's mandatory mediation process. *Id.* Because loss mitigation discussions and documents exchanged during the court-ordered mediation are generally confidential under Puerto Rico law, Apex Bank refused to provide those materials in response to the QWR's. *Id.* For example, Apex Bank would not turn over internal loss mitigation evaluations or communications from the mediation on the ground that such disclosure would violate the mediation confidentiality rules. *Id.* In essence, Apex Bank argued that Puerto Rico's state-law confidentiality provisions prohibited it from releasing certain information about Plaintiff's loan and foreclosure alternatives (regardless of RESPA's supremacy). *Id.*

c. Apex Bank also characterized several of Plaintiff's requests as "not directly related" to the servicing of the loan (i.e. irrelevant) under Regulation X. *Id.* Apex balked at providing general "servicing policies and procedures" or broad

categories of documents, claiming that those requests did not relate to Plaintiff's specific account or were beyond the scope of what RESPA requires. *Id.* Apex cited 12 C.F.R. § 1024.36(f)(1)(iii), which allows a servicer to avoid responding to requests for irrelevant information (defined as information not directly related to the borrower's account). *Id.* Apex contended that some requested items fell under this irrelevant category, and thus it did not furnish them. *Id.*

Mr. Casanovas alleges that Apex Bank relied on exceptions under Regulation X for requests that are duplicative, seek confidential or privileged information, or are not relevant to the loan account. *Id.* ¶ 18. As detailed below, Mr. Casasnovas maintains that Apex Bank's reliance on these exceptions was misplaced and unlawful under the circumstances. *Id.* Notably, Mr. Casanovas argues that RESPA and Regulation X do not contain any blanket exception that relieves a servicer from responding to a QWR simply because a foreclosure lawsuit is pending or because information was shared in mediation. *Id.* It is Mr. Casasnovas's contention that Apex Bank's broad refusal to provide information on those grounds exceeded the limited scope of permissible exceptions in the regulation. *Id.*

Mr. Casasnovas further alleges that, in its responses, Apex Bank failed to address or correct the servicing errors that Plaintiff had pointed out. *Id.* ¶ 19. He notes that Apex Bank did not acknowledge any wrongdoing in how it handled the RFI's. *Id.* In his view, Apex's Bank's response fell short of RESPA's requirement that the servicer, after investigation, either make appropriate corrections to the account

or provide the borrower with a written explanation of why the account is already correct. *Id.* In sum, Mr. Casasnovas alleges that Apex Bank did not comply with the error resolution procedures mandated by 12 C.F.R. § 1024.35. *Id.*

Mr. Casasnovas alleges that he sent the QWRs for the purpose of obtaining information about the loan's servicing independently of any discovery in the foreclosure action. *Id.* ¶ 20. In other words, Mr. Casanovas claims that he was exercising his rights under federal law to get information from his servicer, separate and apart from the state court litigation, relying on the federal statutes and regulations. *Id.* He observes that the QWR's were not issued by the state court, nor were they part of any formal discovery process; he says they were private letters invoking federal law obligations. *Id.* He reiterates that the information sought — such as payment histories and servicing records — was information that Plaintiff, as the borrower, is entitled to obtain from his servicer under RESPA, and he restates that the fact related litigation was ongoing did not diminish Apex's duties under federal law. *Id.* Mr. Casasnovas alleges that nothing in RESPA or Regulation X suspends a servicer's QWR response obligations merely because a foreclosure or mediation is in progress. *Id.* To the contrary, he says that federal regulations explicitly list the only exceptions that allow a servicer not to respond, and being in litigation is not one of those exceptions. *Id.* Therefore, Mr. Casasnovas contends that Apex Bank's refusal to provide information on the grounds of the pending foreclosure case was unlawful and contrary to RESPA. *Id.* ¶ 21.

The Judicial Defendants attached to their motion to dismiss two documents from the state court proceedings between Apex Bank and Mr. Casasnovas. The first is an order dated February 22, 2024 from the Court of First Instance, Superior Court of San Juan in the case of *Apex Bank v. Rafael Juan Casasnovas Cortes*, Civil No. K CD2016-0616. *Jud. Defs.' Mot.* Attach. 1, *Order*. The second is a resolution of the Supreme Court of Puerto Rico dated January 17, 2025, denying Mr. Casasnovas's petition for writ of certiorari for gross noncompliance with the rules of the Supreme Court in the case of *Apex Bank v. Rafael Juan Casasnovas Cortés*, CC-2024-0719. *Jud. Defs.' Mot.* Attach. 2, *Order*.

The Superior Court Order reads in pertinent part:

> **Having examined the parties' filings, the Court rules as follows:**
>
> √ Regarding the production of documents and other documents concerning to the sale of the credits, **Denied**.
>
> Defendants alleged that it is relevant since APEX claims to have standing to enforce the financial claim. However, as the original promissory note is available to defendants for inspection, any other document concerning the sale is irrelevant, or at least defendants have not put the court in a position to determine that it is relevant.
>
> √ Regarding the documents pertaining to Loss Mitigation, within the mediation process, **Denied.**
>
> The Court believes that these documents are confidential under paragraphs (a), (b) and (c) of Rule 6.01 of the Rules for Alternative Dispute Resolution. 4 LPRA App. XXIX.

*Id.* at 2.

## B. The Positions of the Parties

### 1. The Judicial Defendants' Motion to Dismiss

The Judicial Defendants posit multiple grounds under which they say the Court should dismiss with prejudice Mr. Casasnovas's complaint against them: (i) the Eleventh Amendment bars Plaintiff's monetary claims against appearing defendants in their official capacity; (ii) the confidentiality provisions whose validity is challenged by Plaintiff is not preempted by federal law, and therefore, Plaintiff fails to state a claim upon which relief can be granted; (iii) this Court should refrain from ruling on constitutional issues without first addressing threshold jurisdictional grounds; (iv) Plaintiff's request for information related to the loss mitigation procedure in state court is estopped by res judicata, and (v) in the alternative, this court lacks subject matter jurisdiction on the grounds of *Rooker-Feldman*[3] doctrine or should abstain under the *Younger*[4] doctrine. *Jud. Defs.' Mot.* at 5-6. In addition, the Judicial Defendants say that the Plaintiff failed to comply with Federal Rule of Civil Procedure 5.1(a)(2). *Id.* at 6.

**2. Rafael Juan Casasnovas's Opposition**

In his opposition, Mr. Casasnovas first addresses the Eleventh Amendment argument and concedes that he may not proceed for monetary damages against the Judicial Defendants in their official capacities. *Pl.'s Jud. Defs.' Opp'n* at 2. Mr. Casasnovas waives any such monetary claim, limiting his request for relief to declaratory and prospective injunctive relief under *Ex parte Young*.[5] *Id.*

---

[3] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 476 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983)

[4] *See Younger v. Harris*, 401 U.S. 37, 38-39 (1971).

[5] 209 U.S. 123 (1908).

Mr. Casasnovas disputes the Judicial Defendants' arguments about federal preemption. *Id.* at 3. He says that "[f]ederal law preempts the Puerto Rico mediation confidentiality rule to the extent it conflicts with RESPA's mandates, and that "RESPA (12 U.S.C. § 2616) explicitly provides that state laws are preempted if 'inconsistent' with RESPA, 'and then only to the extent of the inconsistency.'" *Id.*

Mr. Casasnovas contends that claim preclusion should not apply because there is no final judgment in Puerto Rico courts, and res judicata requires a perfect identity between the things, causes and persons of the litigants, which is not present between the two cases. *Id.*

As for the *Rooker-Feldman* argument, Mr. Casasnovas maintains that he is not challenging a state court judgment, and, therefore, *Rooker-Feldman* does not apply. *Id.* at 2. Mr. Casasnovas says that *Younger* abstention does not apply because this "is a purely private civil dispute that does not fall into any of the three 'exceptional' categories requiring abstention (criminal prosecutions, certain quasi-criminal enforcement actions, or uniquely state-interest civil proceedings)." *Id.* Mr. Casasnovas argues that his technical failure to comply with Rule 5.1 should not merit dismissal. *Id.* at 3-4.

**3. The Judicial Defendants' Reply**

In their reply, the Judicial Defendants dispute Mr. Casasnovas's argument that *Rooker-Feldman* is limited to judgments, citing First Circuit caselaw that applied *Rooker-Feldman* to interlocutory rulings. *Jud. Defs.' Reply* at 2-3. Furthermore, the Judicial Defendants argue that the main point of *Rooker-Feldman*

is that the United States District Court is not the appropriate forum for challenging the orders of the Puerto Rico courts, which they contend is what is happening here. *Id.* at 3-4.

If *Rooker-Feldman* does not bar the Plaintiff's complaint, the Judicial Defendants say that *Younger* abstention does, because the foreclosure between Mr. Casasnovas and Apex Bank is still pending in Puerto Rico courts. *Id.* at 4-5.

Regarding res judicata, the Judicial Defendants, citing First Circuit law, contradict Mr. Casasnovas's contention that a perfect identity of the parties and causes of action is necessary for its application. *Id.* at 5-6. The Judicial Defendants maintain that the order of the Puerto Rico court, which determined that the information being requested is deemed confidential under Puerto Rico law, is subject to the principles of res judicata. *Id.*

Finally, the Judicial Defendants argue that Mr. Casasnovas is not entitled to the information he is demanding under RESPA and therefore, his lawsuit fails on its merits because RESPA does not preempt the confidentiality provisions of Puerto Rico law. *Id.* at 6-7.

**4. Rafael Juan Casasnovas's Sur-Reply**

With the Court's permission, Mr. Casasnovas filed a sur-reply. *Pl.'s Sur-Reply* at 1-7. First, Mr. Casasnovas rejects the Judicial Defendants' reliance on *Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17 (1st Cir. 2005) to support their *Rooker-Feldman* argument. Mr. Casasnovas contends that, unlike *Federación*, to rule in his favor in this case, the federal court is

not required to conclude that the Puerto Rico court erred. *Id.* at 1-2. Instead, he maintains that his federal cause of action is grounded on a distinct claim that the Judicial Defendants violated federal law. *Id.* at 2-3.

Next, Mr. Casasnovas says that the Judicial Defendants have shifted their defense from claim to issue preclusion, but he contends that the issue preclusion does not apply because the issues in Puerto Rico courts and in this Court are different. *Id.* at 3.

In his sur-reply, Mr. Casasnovas reiterates his argument that *Younger* abstention does not apply, arguing that the Judicial Defendants' formulation would swallow *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013). *Id.* at 3-4. Mr. Casasnovas disputes the Judicial Defendants' interpretation of the RESPA regulations and maintains that the regulations require a fulsome response from Apex Bank, regardless of the confidentiality provisions of Puerto Rico law. *Id.* at 4-6.

Finally, Mr. Casasnovas argues that the Court should allow him to amend his complaint to clarify that he is seeking an order that would require the Puerto Rico courts to create an exception to the mediation confidentiality rules that would allow compliance with RESPA. *Id.* at 6-7.

### C. Legal Standards

"Although dismissals under Rule 12(b)(1) and 12(b)(6) are 'conceptually distinct…the same basic principles apply in both situations." *Cangrejeros de Santurce Baseball Club, LLC v. Liga de Béisbol Profesional de P.R., Inc.*146 F.4th 1, 11 (1st Cir. 2025) (quoting *Lyman v. Baker*, 954 F.3d 351, 359 (1st Cir. 2020)). "In

both contexts, [courts] accept as true the complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor." *Cangrejeros*, 146 F.4th at 11 (citing *Lyman*, 954 F.3d at 359 and *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022)). However, courts disregard "conclusory legal allegations" and factual assertions that are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *Legal Sea Foods v. Strathmore Ins. Co.*, 36 F.4th 29, 34 (1st Cir. 2022) (first quoting *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015), and then quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (*en banc*).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662. 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 I2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under Rule 12(b)(1), "[courts] also disregard 'statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements,' and consider whether the non-conclusory, non-speculative facts support the existence of subject matter jurisdiction." *Cangrejeros,* 146 F.4th at 11 (quoting *Lyman*, 954 F.3d at 360) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1stCir. 2012)). "[Courts] may consider information attached to or incorporated into

the complaint, along with facts subject to judicial notice." *Id.* (citing *Lyman*, 954 F.3d at 360).

In the context of a Rule 12(b)(6) motion, "plausible" means "something more than merely possible" or "merely consistent with a defendant's liability." *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (quotation marks and citations omitted) (first quoting *Schatz*, 669 F.3d at 55 and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Although this does not require "detailed factual allegations," the facts pleaded must at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, a facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, dismissal is appropriate if a complaint's well-pleaded facts do not "possess enough heft to 'sho[w] that [the plaintiff] is entitled to relief.'" *Clark v. Boscher*, 514 F.3d 107, 112 (1st Cir. 2008) (first alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Assessing a complaint's plausibility is a context-specific task that requires "the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In the First Circuit, district courts apply a "two-step analysis." *Cardigan Mountain Sch.*, 787 F.3d at 84. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P. R.*, 676 F.3d 220, 224

(1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.")

"Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Tambone*, 597 F.3d at 442 (citing *Twombly*, 550 U.S. at 555).

### D. Discussion

#### 1. Eleventh Amendment

As Mr. Casasnovas concedes that he may not bring a monetary damages claim against the Judicial Defendants in their official capacities under the Eleventh Amendment, the Court dismisses with prejudice that portion of the complaint.

#### 2. *Rooker-Feldman*

When considering motions to dismiss that raise multiple grounds for dismissal, the Court ordinarily "resolves doubts about its jurisdiction over the subject matter" before addressing personal jurisdiction or the merits. *Ruhrgas AG v. Marathon Oil Co.*, 536 U.S. 574, 578 (1999). The Court begins with the Judicial Defendants' motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). In evaluating a Rule 12(b)(1) motion, the Court must "take all well-pleaded

allegations as true and give Mr. Casasnovas the benefit of all reasonable inferences." *Perales-Muñoz v. United States*, 151 F.4th 1, 6 (1st Cir. 2025). As "the party seeking to invoke federal jurisdiction," Mr. Casasnovas bears "the burden of demonstrating [its] existence." *Id.* The Court may also consider jurisdictional evidence submitted by the parties and matters subject to judicial notice. *See Martinez-Rivera v. Commonwealth of P.R.*, 812 F.3d 69, 74 (1st Cir. 2016). Here, the Judicial Defendants have submitted certified copies of documents from the Puerto Rico courts, and the Court has taken judicial notice of those documents. "If the court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action." FED. R. CIV. P. 12(h)(3).

Congress has given the United States Supreme Court jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State" where the judgment in question concerns federal law. 28 U.S.C. § 1257(a). This jurisdiction is "exclusive" to the Supreme Court. *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam). "Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." *Id.* "The idea is that…the only federal court with statutory jurisdiction to review a state court's decision is the Supreme Court, and 'an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly.'" *Tyler v. Supreme Jud. Ct. of Mass.*, 914 F.3d 47, 50 (1stCir. 2019) (quoting *Rooker*, 263 U.S. at 416). This doctrine "applies only in the 'limited circumstances' where 'the losing party in state court filed suit in federal court after the state

proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Federación*, 410 F.3d at 24 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005)).

Here, the record reflects that Mr. Casasnovas has been a defendant in a foreclosure action initiated by Apex Bank in the Court of First Instance, Superior Court of San Juan and, during the litigation, he made a discovery request for the loss mitigation documents that he now seeks in this federal case. The Superior Court denied his request because it concluded that the requested documents were confidential under the rules applicable to mediations. Mr. Casasnovas applied for a writ of certiorari to the Puerto Rico Court of Appeals, which denied his petition for writ, and then applied for a writ of certiorari to the Supreme Court of Puerto Rico, which also denied the petition for writ.[6] The foreclosure between Apex Bank and Mr. Casasnovas is apparently still pending in the courts of Puerto Rico.

The first question that the parties dispute is whether the *Rooker-Feldman* doctrine is applicable to interlocutory orders. Here, to the Court's knowledge, the foreclosure case is still pending in state court, and there has been no final judgment, and furthermore, the state court's discovery order denying Mr. Casasnovas's request for loss mitigation documents is an interlocutory order.

---

6 This litigation history is set out in the Judicial Defendants' motion, *Jud. Defs.' Mot.* at 8-9, and Mr. Casasnovas has not contended it is erroneous. Although the Judicial Defendants request that the Court take judicial notice of the proceedings in Puerto Rico courts, *id.* at 9 n.2, the Court does so only on a limited basis. The Court takes judicial notice that there have been proceedings in the state courts of Puerto Rico, but it cannot take judicial notice of the actual proceedings beyond what is set forth in the attachments to the Judicial Defendants' memorandum. This is because under federal statute, all proceedings in the United States District Court for the District of Puerto Rico must be conducted in English, and the Judicial Defendants have provided only limited translations of those documents. *See* 48 U.S.C. § 864; *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1056 n.10 (1st Cir. 2021).

The parties correctly identify *Federación* as the binding First Circuit authority. "The *Rooker-Feldman* doctrine bars a plaintiff who lost in state court proceedings from 'implicitly or explicitly. . . seeking an opposite result … [in] the lower federal courts.'" *Overseas Military Sales Corp. v. Giralt-Armada*, 503 F.3d 12, 15 n.1 (1st Cir. 2007) (quoting *Federación*, 410 F.3d at 24).

In *Federación*, the First Circuit, applying *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975), carved a middle path for determining whether a federal court is barred from addressing an interlocutory order from a state court under *Rooker-Feldman*. *See* Dustin E. Buehler, *Revisiting Rooker-Feldman: Extending the Doctrine to State Ct. Interlocutory Orders*, 36 FLA. ST. U. L. REV. 373, 404-07 (2009). The *Federación* Court wrote:

> *Cox Broadcasting* defines four situations in which a non-final judgment will nevertheless be considered "final" for purposes of § 1257:
>
> > [(1)] there are further proceedings — even entire trials — yet to occur in the state courts but where for one reason or another the federal issue is conclusive or the outcome of further proceedings preordained;
> >
> > [(2)] the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings;
> >
> > [(3)] the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case;
> >
> > [(4)] the federal issue has been finally decided in the state courts with further proceedings pending in which the party seeking review here

> might prevail on the merits on nonfederal grounds, thus rendering unnecessary review of the federal issue by this Court, and where reversal of the state court on the federal issue would be preclusive of any further litigation on the relevant cause of action rather than merely controlling the nature and character of, or determining the admissibility of evidence in, the state proceedings still to come . . . [and] refusal immediately to review the state-court decision might seriously erode federal policy.

*Id.* at 25 n. 11 (quoting *Cox*, 420 U.S. at 479-83). From the Court's perspective, the exception that best fits this situation is number one. Mr. Casasnovas presumably raised the federal issue in his quest for discovery from Apex Bank, and the Court of First Instance rejected his claim. The state court's ruling on the discoverability of the loss mitigation information is certainly conclusive for the rest of the state court litigation, especially since Mr. Casasnovas's attempts at appellate review have been rejected.[7] Thus, the Court concludes that the *Rooker-Feldman* doctrine precludes Mr. Casasnovas, a litigant who lost a federal issue in state court proceedings from "'implicitly or explicitly . . . seeking an opposite result . . . [in] the lower federal courts.'" *Federación*, 410 F.3d at 24.

As the United States Supreme Court recently reiterated, "'lower federal courts possess no power whatever to sit in direct review of state court decisions.'" *T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1750 (2026) (quoting *Feldman*, 460

[7] The evidence that Mr. Casasnovas raised RESPA in his state discovery motion is equivocal. But the Court concludes that if he failed to raise RESPA in state court, he waived the right to raise it here. The Court rejects the notion that a litigant could put the federal argument in his back pocket during the state proceeding and come to federal court and obtain an order overruling a state court discovery order based on an issue that could have been but was not raised before the state court. Furthermore, "[t]here is a presumption that the state courts, including the State's highest court, are as capable as their federal counterparts in safeguarding federal rights." *Bryan v. N.H. AG John M. Formella*, No. 26-cv-337-SM-TSM, 2026 U.S. Dist. LEXIS 137637, at *5 (D.N.H. May 19, 2026) (citing *Bettencourt v. Bd. of Reg. in Med.*, 904 F.2d 772, 776 (1st Cir. 1990)).

U.S. at 484 n.16). Here, Mr. Casasnovas, dissatisfied with the Puerto Rico court's discovery ruling, seeks a federal court order effectively countermanding the state court's order. This, in this Court's view, violates *Rooker-Feldman*, and the remedy for a violation of *Rooker-Feldman* is "dismiss[al] for want of subject-matter jurisdiction." *Id.* at 1748 (quoting *Exxon*, 544 U.S. at 284 and citing *Lance v. Dennis*, 546 U.S. 459, 466 (2006)).

### 3. *Younger* Abstention

Proper application of the *Rooker-Feldman* doctrine is famously fraught,[8] but in the Court's view, the application of *Younger* abstention to this situation is clearer. In 1971, the United States Supreme Court decided *Younger v. Harris*, *supra*, the seminal case for *Younger* abstention.

Mr. Casasnovas observes that "[i]n *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court unanimously clarified that Younger abstention applies only to three types of exceptional state proceedings: (1) ongoing state **criminal** prosecutions; (2) certain state **civil enforcement** proceedings akin to criminal prosecutions; and (3) state **civil proceedings involving certain orders uniquely ancillary to the state courts' ability to perform their judicial functions** (such as civil contempt or other court-supervision orders)." *Pl.'s Jud. Defs.' Opp'n* at 16 (emphasis in *Pl.'s Opp'n*). But, as the *Sprint Communications* Court wrote, the Supreme Court isolated three types of exceptional state proceedings in

[8] The Supreme Court's most recent foray into *Rooker-Feldman*, decided just this June, addressed whether the doctrine applied while a state court judgment was being appealed. *T.M.*, *supra*. The Supreme Court's five-four decision reflects the unsettled nature of the *Rooker-Feldman* doctrine.

1989 in *New Orleans Public Service, Inc. v. Council of New Orleans* (*NOPSI*), 491 U.S. 350 (1989). This means that the First Circuit decided *Massachusetts Delivery Association v. Coakley*, 671 F.3d 33 (1st Cir. 2012) with the *NOPSI* standards already in place as later reaffirmed in *Sprint*.

As the foreclosure action is not a criminal case or a state civil enforcement action akin to a criminal prosecution, the question narrows into whether the state foreclosure action and involves "certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 368. The *NOPSI* Court cited two examples of abstainable orders: *Juidice v. Vail*, 430 U.S. 327, 226, n. 12 (1977) (civil contempt order) and *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal). *NOPIS*, 491 U.S. at 368. At the same time, the Supreme Court has cautioned that the various types of abstention are not "rigid pigeonholes." *Pennzoil*, 481 U.S. 1, 11, n.9 (1987)); *NOPSI*, 491 U.S. at 359.

The Court concludes that this case falls within the third category identified in *Sprint*. Mr. Casasnovas seeks federal relief that would effectively countermand the state court's discovery order denying disclosure of documents it concluded were confidential under the rules governing Puerto Rico's mandatory foreclosure-mediation process. A state court's authority to control discovery and enforce confidentiality requirements in a court-supervised proceeding implicates its ability to administer its own judicial proceedings. Accordingly, the Court concludes this discovery order is "uniquely in furtherance of the state courts' ability to perform their

judicial functions," *NOPSI*, 491 U.S. at 368, and that the threshold *Sprint* requirement is satisfied.

In *Massachusetts Delivery Association v. Coakley*, 671 F.3d 33 (1st Cir. 2012), the First Circuit engaged in a comprehensive review of *Younger* abstention. The *Coakley* Court began by noting that the "normal rule is that the federal courts must exercise their jurisdiction and decide cases brought before them." *Id.* at 40 (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)). *Younger* concerned "a case involving an underlying state criminal prosecution against a defendant who then filed suit in federal court to attack the state statute on which his criminal prosecution was brought." *Id.* (citing *Younger*, 401 U.S. at 38-39).

As the First Circuit explained, the *Younger* doctrine "reflects a 'longstanding public policy against federal court interference with state court proceedings.'" *Id.* (quoting *Younger*, 401 U.S. at 43). *Younger* abstention is based on "two conceptual foundations." *Id.* The first concerns federal interference in criminal actions pending in state court and is not pertinent to this case. *Id.* However, the second conceptual foundation and the more important one for purposes of this case, is that "*Younger* rests upon basic notions of federalism and comity, and also on a related desire to prevent unnecessary duplication of legal proceedings." *Id.* (citing *Younger*, 401 U.S. at 44).

The First Circuit observed that "[i]n *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982), the [Supreme] Court set forth three general guidelines, which [the First Circuit has] since described in a series of

cases: *Younger* applies 'when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge.'" *Coakley*, 671 F.3d at 41 (citing *Rossi v. Gemma*, 489 F.3d 26, 34-35 (1st Cir. 2007)).

Here, there was and is a pending state court proceeding, which was ongoing when Mr. Casasnovas filed his federal lawsuit.[9] Turning to the second prong, it seems apparent that "the state court proceedings 'implicate important state interests.'" *Id.* (quoting *Middlesex Cnty.*, 457 U.S. at 432). The Court readily concludes that the extent to which its mandatory mediation process for foreclosure actions remains confidential represents an important state interest. Finally, in his federal lawsuit, Mr. Casasnovas has alleged that the Puerto Rico confidentiality provision is unconstitutional. *Pl.'s Compl.* at ¶ 39(d) ("2013 amendments to Regulation X stated that loss mitigation was a standard servicer duty, consequently making Puerto Rico's confidentiality clause in the Act unconstitutional"). Mr. Casasnovas has not made the case that the Puerto Rico courts failed to provide him with an adequate opportunity to advance his federal constitutional challenge.

There is one additional issue, however. Although not raised by the parties,[10] the First Circuit discussed the preemption exception to *Younger* in *Sirva Relocation*

[9] The *Coakley* Court set forth several criteria for determining whether the federal case would interfere with the state case. 671 F.3d at 40-41. It seems clear that, if successful, this federal lawsuit would interfere with the pending state foreclosure action, effectively countermanding a state court discovery order.

[10] The Court could deem the *Younger* preemption argument waived. *See Liviz v. Supreme Judicial Ct. of Mass.*, No. 1-1340, 2018 U.S. App. LEXIS 29380, at *2 (1st Cir. Oct. 2, 2018) ("Liviz

*LLC v. Richie*, 794 F.3d 185, 197-200 (1st Cir. 2015). The First Circuit explained that the preemption "exception pertains when state law is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it.'" *Id. Sirva*, 794 F.3d at 197 (quoting *Younger*, 401 U.S. at 53-54 (internal quotation mark omitted)). The First Circuit described the preemption exception as "quite narrow." *Id.* But the First Circuit acknowledged that the courts have it is possible "that a facially conclusive claim of preemption may serve to override the *Younger* mandate. *Id.* (citing *NOPSI*, 491 U.S. at 366-67).

The First Circuit wrote that "when a federal statute indisputably preempts a state-law claim, preemption is facially conclusive whether or not we have previously opined on the question." *Id.* at 198. But "when there is room for reasonable doubt, the preemption claim is not facially conclusive and cannot block abstention." *Id.* The First Circuit cited *Verizon New England, Inc. v. Rhode Island Department of Labor & Training*, 723 F.3d 113, 118-19 (1st Cir. 2013) as "holding [the] preemption exception inapplicable where federal plaintiff was attempting to extend the doctrine of labor law pre-emption in[to] a new area." *Sirva*, 794 F.3d at 198 (internal quotation marks omitted).

The First Circuit explained that *Younger* "contemplates that when federal questions are raised in a state proceeding, those questions ordinarily should be resolved in that proceeding." *Id.* at 198 (citing *Younger*, 401 U.S. at 45). The *Sirva*

---

does not develop any argument that one or more of the recognized *Younger*-abstention exceptions might apply").

Court noted that "[o]nly when preemption of the state-law claim is beyond reasonable dispute does the paradigm shift." *Id.* (citing *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1265 (11th Cir. 2024)). The First Circuit pointed out that "[e]ven modest ambiguity concerning the result of a preemption inquiry precludes this shift." *Id.* The First Circuit gave three examples of when preemption would not prevent *Younger* abstention: (1) when there are "unresolved factual disputes" pertinent to preemption, (2) where a federal court "would be required to delve into unsettled complexities of state law," and (3) if "the reach of a preemption provision is itself uncertain." *Id.* at 198-99.

Applying First Circuit guidance, the Court concludes that RESPA preemption of Puerto Rico confidentiality rules is not "beyond reasonable dispute." *Id.* at 198. First, the Court of the First Instance in Puerto Rico, the Court of Appeals of Puerto Rico, and the Supreme Court of Puerto Rico has already ruled that the mediation confidentiality rules bar Mr. Casasnovas's demand that Apex Bank reveal the loss mitigation information he is demanding, and that ruling has been upheld by both the Court of Appeals of Puerto Rico, and the Supreme Court of Puerto Rico, albeit the latter on procedural grounds.

Second, even if Mr. Casasnovas's interpretation RESPA would require Apex Bank to disclose loss mitigation information, it is by no means clear that the state confidentiality policies should not exempt disclosure during the mediation process.

Third, it is by no means "beyond reasonable dispute" that Mr. Casasnovas's interpretation of RESPA and the scope of the information he is demanding are subject to disclosure under RESPA. *See Apex Mot.* at 10-24.

The Court concludes that the *Younger* abstention applies and that it must dismiss Mr. Casasnovas's complaint as against the Judicial Defendants.

## IV. CONCLUSION

The Court GRANTS in part and DISMISSES in part Defendant Apex Bank's Renewed Motion to Dismiss (ECF No. 60). The Court GRANTS the Renewed Motion 10-to Dismiss insofar as it asserts that Rafael Juan Casasnovas has failed to properly serve Apex Bank with a copy of the complaint and summons, ORDERS Rafael Juan Casasnovas to effect service within twenty-eight days, and DISMISSES without prejudice Apex Bank's motion to the extent it demands that Rafeal Juan Casasnovas's complaint be dismissed. The Court ORDERS Attorney Castellanos-Otero to SHOW CAUSE within fourteen days as to why this Court should not impose a sanction upon him for his failure to serve Apex Bank and his intransigence once his failure had been demonstrated, and ORDERS Apex Bank to reply to Attorney Castellanos-Otero;s response within fourteen days of his response. The Court DISMISSES without prejudice Apex Bank's Motion to Dismiss (ECF No. 25) as moot regarding service of process and as premature regarding whether the complaint states a cognizable cause of action because the Court has not yet assumed jurisdiction.

The Court GRANTS the Judicial Defendants' Motion to Dismiss both insofar as the complaint demands monetary damages against the Judicial Defendants and

DISMISSES the monetary damages claims against the Judicial Defendants in their official capacities as violative of the Eleventh Amendment and insofar as the complaint violates the *Rooker-Feldman* doctrine and *Younger* abstention.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2026